```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA                  :
                                          :            05 Cr. 390 (SHS)
         -against-                        :
                                          :            OPINION & ORDER
JOSEPH BONGIORNO,                         :
PATRICK McGAGH,                :
MICHAEL HAYWARD,                          :
MICHAEL STERN,                            :
RICHARD VOLPE,                            :
ROBERT SCAVONE, and                       :
GERALD HAYES,                             :
                                          :
                Defendants.               :
------------------------------------------------------------x
```

SIDNEY H. STEIN, U.S. District Judge.

Defendants, seven former employees of Van der Moolen Specialists USA, LLC ("VDM"), have moved to dismiss the indictment[1] in this action on the ground that the facts alleged do not constitute a crime. Each of the defendants is charged separately with one count of securities fraud in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; 15 U.S.C. § 78ff and 18 U.S.C. § 2. Four of the defendants are also charged with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371.[2] Because defendants jointly filed this motion to dismiss and the underlying issues are identical as to each defendant, the Court addresses the motion with respect to all defendants. The motion is granted in part and denied in part because the facts alleged in the indictment, if proven at trial, are sufficient to constitute violations of subsections (a) and (c)

---

[1] All references to the "indictment" refer to the superseding indictment filed on March 15, 2006.
[2] The indictment originally charged all seven defendants with both securities fraud and conspiracy to commit securities fraud. On the motion of the government on April 6, 2006, the Court dismissed the conspiracy charge against defendants Gerard Hayes, Robert Scavone and Richard Volpe. Pursuant to Fed. R. Crim. P. 8(b), those three defendants will be tried in successive separate trials for securities fraud only.

of Rule 10b-5, but are insufficient as a matter of law to constitute a violation of subsection (b) of that rule.

I. Background

The facts alleged in the indictment are as follows: Defendants are former specialists who worked on the floor of the New York Stock Exchange ("NYSE"). (Ind. ¶¶ 3-11.) Nearly all purchases and sales of securities on the NYSE must be executed through a specialist. (Id. ¶ 11.) Each security listed on the exchange is assigned to a particular specialist and is traded through an assigned post on the floor of the exchange where that specialist works. (Id.) For example, defendant Joseph Bongiorno acted as the NYSE specialist for trading in Hewlett-Packard Co. stock during the time period alleged in the indictment. (Id. ¶ 3.)

The job of a specialist is to act, in essence, as an auctioneer: the specialist matches offers to sell securities from some customers with bids to buy from others. (Id. ¶¶ 11-12.) If there is an open order to buy and a matching one to sell, the specialist, pursuant to NYSE rules, must match the buyer with the seller. (Id. ¶¶ 12, 17.) These are called "agency" or "broker" trades, for which the specialist generally receives no compensation. (Id. ¶ 12.)

If there are no matching orders to sell and buy within the same price range at a given time, specialists have an "affirmative obligation" to fill the void from their own (or their employer's) proprietary account "when necessary to minimize any actual or reasonably anticipated short-term imbalance between supply and demand, to facilitate price continuity, or to fill customer orders when there were no available contra parties to those orders." (Id. ¶¶ 13, 16.) For example, if a buy order comes in with no matching order to sell, the specialist must, after a certain time period, sell stock from the "inventory" of stock in his proprietary, or dealer, account in order to "maintain a fair and orderly market." (Id.) This is called trading on a "principal" or

"dealer" basis. (Id.) NYSE rules prohibit this type trading, for which the specialist can earn a profit, if the specialist is aware of pending orders from investors at the same price range. (Id. ¶ 17.)

The indictment charges defendants with violating the securities laws by repeatedly trading from their proprietary accounts "while in the possession of executable customer buy and sell orders." (Id. ¶ 19.) Defendants did so in two ways: (1) by "trading ahead" and (2) by "interpositioning." (Id.) "Trading ahead" occurs when a specialist receives a public buy order and a public sell order for the same stock at the same time and, rather than matching the orders as required by NYSE rules, "step[s] in front" of one of the orders and trades with the other order using his dealer account. (Id. ¶ 20). As a result, the specialist receives the most advantageous price available for his own or his firm's proprietary account, whereas the public customer who is stepped in front of receives a less advantageous price. (Id.)

"Interpositioning" requires a further step. Instead of pairing off two pending buy and sell orders, the specialist trades twice – buying the stock from one public customer and then selling it to the other – in order to capitalize on the slight pricing differences between the matching orders. (Id. ¶ 21.) As a result, at least one of the public customers involved in the transaction receives a less advantageous price than he or she otherwise would have received. (Id.)

According to the indictment, from January 1999 through April 2003, Joseph Bongiorno caused approximately 7,570 instances of trading ahead, resulting in approximately $1,199,400 in customer harm, and 14,680 instances of interpositioning, resulting in illegal profits to his dealer account of approximately $1,322,800 (id. ¶ 24); Patrick McGagh caused approximately 4,010 instances of trading ahead, resulting in approximately $1,178,800 in customer harm, and 20,040 instances of interpositioning, resulting in illegal profits to his dealer account of approximately

$3,271,400 (id. ¶ 25); Michael Hayward caused approximately 3,520 instances of trading ahead, resulting in approximately $751,800 in customer harm, and 2,770 instances of interpositioning, resulting in illegal profits to his dealer account of approximately $333,100 (id. ¶ 26); Michael Stern caused approximately 5,150 instances of trading ahead, resulting in approximately $619,100 in customer harm, and 3,940 instances of interpositioning, resulting in illegal profits to his dealer account of approximately $400,000 (id. ¶ 27); Richard Volpe caused approximately 4,070 instances of trading ahead, resulting in approximately $421,300 in customer harm, and 12,540 instances of interpositioning, resulting in illegal profits to his dealer account of approximately $710,500 (id. ¶ 28); Robert Scavone caused approximately 4,440 instances of trading ahead, resulting in approximately $330,000 in customer harm, and 3,540 instances of interpositioning, resulting in illegal profits to his dealer account of approximately $189,600 (id. ¶ 29); and Gerard Hayes caused approximately 5,520 instances of trading ahead, resulting in approximately $556,500 in customer harm, and 2,220 instances of interpositioning, resulting in illegal profits to his dealer account of approximately $150,000 (id. ¶ 30).

After setting forth these specific allegations, the indictment charges in the securities fraud counts generally that:

> On or about the dates set forth below, in the Southern District of New York and elsewhere, the defendants … unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would and did operate as a fraud and deceit upon persons, in connection with the purchase and sale of stock….

(Id. ¶ 36.)

The conspiracy count in the indictment contains nearly identical language to that quoted above in setting forth the "Objects of the Conspiracy" and also alleges that defendants "unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, to commit securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5." (Id. ¶ 31.) The indictment alleges as overt acts in furtherance of the conspiracy several specific instances of defendants causing interpositioning and separates instances of defendants directing their trading assistants to execute trades for defendants' proprietary accounts ahead of executable customer orders. (Id. ¶ 34.)

II. Analysis

Defendants assert that the indictment should be dismissed because, even if all of the factual allegations in the indictment are proven at trial, defendants cannot be found guilty of securities fraud. They claim that trading ahead and interpositioning at most constitute violations of NYSE rules and breaches of their fiduciary duties to public customers, but do not amount to violations of the federal securities laws. Defendants also assert that allowing a prosecution to go forward under the government's allegedly "novel" construction of the securities statutes would violate both the rule of lenity and their due process rights.

The government responds that (1) the indictment is legally sufficient because it tracks the language of the securities fraud statutes; (2) defendants' conduct, as alleged, violated section 10(b) of the Securities Exchange Act of 1934, as well as all three provisions of Rule 10b-5; and (3) prosecuting defendants for securities fraud does not violate their due process rights or the rule of lenity because the law is unambiguous and defendants had fair notice of its prohibitions.

### A. Defendants' Motion Should Not Be Denied Solely Because the Indictment Tracks the Statutory Language

As a general rule, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir. 2002) (quoting United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (internal quotation marks and citations omitted)). Typically, an indictment should not be dismissed so long as it "charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." Stavroulakis, 952 F.2d at 693. The indictment here plainly meets these minimal requirements. The government urges that for this reason alone, the Court should deny defendants' motion.

However, the basis for defendants' motion is not a pretrial challenge to the evidence or a claim that the indictment is not pled with sufficient specificity, but rather that the facts alleged do not state an offense as a matter of law. If defendants are correct, it would be improper and a waste of resources for everyone involved to conduct a lengthy trial – the parties estimate the trial as taking up to three months – and submit the case to a jury only to rule on a post-trial motion that the government's theory of criminal liability fails no matter what facts it was able to adduce at trial. See United States v. Mowad, 641 F.2d 1067, 1069, 1071-72 (2d Cir. 1981) (concluding that a charge for dealing in firearms without a license "should not have been submitted to the jury" because the statute prohibiting illegal dealing in firearms, 18 U.S.C. § 922(a)(1), did not apply to defendant's conduct as a matter of law). Because the government has set forth enough facts in the indictment to rule on defendants' motion and has not averred that it intends to present additional theories of securities fraud at trial, there is no reason for the Court to delay ruling on the merits of defendants' arguments. See Fed. R. Crim. P. 12(b)(3)(B) ("at any time while the

6

case is pending, the court may hear a claim that the indictment or information fails … to state an offense.").

**B. The Indictment Sufficiently Alleges a Scheme to Defraud and a Course of Business that Operates as a Fraud**

Section 10(b) of the Securities Exchange Act of 1934 makes it a crime to

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5, which was promulgated pursuant to section 10(b), provides that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. The government contends that defendants' conduct, as alleged, violated all three prongs of Rule 10b-5. The three prongs are disjunctive, however, such that the government can obtain a conviction by proving any one of them. See United States v. Naftlin, 441 U.S. 768, 774, 99 S. Ct. 2077, 60 L. Ed. 2d 624 (1978); In re Alstom, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005). The Court will first address subsections (a) and (c), which are broadly aimed at participation in fraudulent securities schemes, see In re Global Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319, 335 (S.D.N.Y. 2004), and then address subsection (b), which criminalizes material misstatements or omissions.

The keystone required for a jury to convict a defendant pursuant to subsections (a) or (c) of Rule 10b-5 is a finding of a fraudulent scheme or course of business.  See Superintendent of Ins. v. Bankers Life & Casualty Co., 404 U.S. 6, 11 n.7, 92 S. Ct. 165, 30 L. Ed. 2d 128 (1971) ("We believe that 10(b) and Rule 10b-5 prohibit all fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception.  Novel or atypical methods should not provide immunity from the securities laws." (quoting A. T. Brod & Co. v. Perlow, 375 F.2d 393, 397 (2d Cir. 1967))); see also Sand, Modern Federal Jury Instructions, Instr. 57-22 ("A device, scheme or artifice … is merely a plan for the accomplishment of any objective.  Fraud is a general term which embraces all ingenious efforts and means that individuals devise to take advantage of others.").  The government asserts that defendants' alleged practices of interpositioning and trading ahead constituted fraud because defendants were using their position as specialists – who can uniquely see both buy and sell orders in advance of a trade's consummation – to profit at the expense of their public customers, in the same way that a card dealer would be committing fraud by sneaking a peek at the deck and taking the best cards for himself before dealing a hand.

Defendants respond that alleged violations of subsections (a) and (c) that do not involve material misstatements or omissions can sustain a conviction only if they constitute manipulation, which is a "term of art" referring to practices "such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." (Defs.' Reply Mem. of Law in Further Support of Their Motion To Dismiss the Indictment at 3 (citing Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 476, 97 S. Ct. 1292, 51 L. Ed. 2d 480 (1977) (internal citation and quotation marks omitted).)  Defendants assert that because trading ahead and interpositioning do not amount to manipulation as defined in Santa Fe Industries – a

point the government does not dispute – they cannot be found guilty pursuant to subsections (a) or (c) of Rule 10b-5.

Defendants' narrow focus on manipulation is misplaced. They contend that manipulation is required because of dicta in the United States Supreme Court's decision in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994), which states that section 10(b) "prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act." The holding of Central Bank, however, applies only to those who do nothing more than aid or abet a securities violation; the case does not address what can constitute a fraud perpetrated by the principal actor, as is the context here. See Central Bank, 511 U.S. at 177-78, 191.

Moreover, the Court in Central Bank begins its decision noting that section 10(b) imposes liability on "those who commit a manipulative or deceptive act in connection with the purchase or sale of securities" and, other than in the single passage cited by defendants, repeatedly mentions the statute's prohibition against "manipulative or deceptive" acts. Id. at 164, 177-78 (emphasis added). At most, then, Central Bank stands for the proposition that subsections (a) and (c) of Rule 10b-5 only prohibit frauds that involve manipulation or deception. See, e.g., In re Alstom, 406 F. Supp. 2d at 474 ("subsections (a) and (c) of Rule 10b-5 encompass a wide range of activities and are not limited to the prohibition of market manipulation"); In re Parmalat Sec. Litig., 376 F. Supp. 2d 472, 492 (S.D.N.Y. 2005) (defendants' narrow interpretation of what is prohibited by subsections (a) and (c) of Rule 10b-5 "is refuted by the language of the rule as well the case law, which make it clear that subsections (a) and (c) apply to at least some deceptive acts as much as to certain technical forms of market manipulation"); In re Global Crossing, 322 F. Supp. 2d at 336 ("subsections (a) and (c)

9

encompass much more than illegal trading activity … they encompass '<u>any</u> device, scheme or artifice,' or '<u>any</u> act, practice, course of business' used to perpetrate a fraud on investors") (emphasis in original).

The question is therefore whether a reasonable jury could find that the alleged fraud involved an act or acts of deception. If the answer is yes, the motion to dismiss as to subsections (a) and (c) must be denied. Defendants, citing the same language as set forth above in <u>Central Bank</u>, assert that only material misrepresentations or omissions can constitute deception. Again, however, defendants' crabbed interpretation would narrow the reach of section 10(b) in a way inconsistent with the statute's text and purpose. See <u>Affiliated Ute Citizens v. United States</u>, 406 U.S. 128, 151, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972) ("These proscriptions, by statute and rule, are broad and, by repeated use of the word 'any,' are obviously meant to be inclusive."); <u>United States v. Russo</u>, 74 F.3d 1383, 1390 (2d Cir. 1996) ("The purpose of the Section and its implementing regulations is to prevent fraud, whether it is a garden type variety of fraud, or present[s] a unique form of deception. Novel or atypical methods should not provide immunity from the securities laws.") (internal quotation marks and citations omitted); <u>Chiarella v. United States</u>, 445 U.S. 222, 226, 100 S. Ct. 1108, 63 L. Ed. 2d 348 (1980) ("Section 10(b) was designed as a catchall clause to prevent fraudulent practices."). Rather, "[i]t is apparent from Rule 10b-5's language and the caselaw interpreting it that a cause of action exists under subsections (a) and (c) for behavior that constitutes participation in a fraudulent scheme, even absent a fraudulent statement by the defendant." <u>In re Global Crossing</u>, 322 F. Supp. 2d at 335. <u>See also</u> <u>In re Alstom</u>, 406 F. Supp. 2d at 474 ("a claim of liability for violations of Rule 10b-5(a) or (c) does not require an allegation that the defendant made a statement, as liability is premised on a course of deceptive conduct undertaken by the defendant, rather than on

misrepresentations or omissions."). Defendants' conduct therefore can be considered deceptive even if it did not involve misstatements or omissions.

Affording the term its proper – and fully inclusive – meaning, a "deceptive" act is one which "tend[s] to deceive" or "ha[s] power to mislead." Webster's Third New Int'l Dictionary at 585; see In re Parmalat Sec. Litig., 376 F. Supp. 2d at 502 ("The same dictionary used by the Supreme Court defines 'deceptive' as '[t]ending to deceive; having power to mislead.'") To deceive means "to take unawares esp[ecially] by craft or trickery … to deprive esp[ecially] by fraud or stealth … [or] to cause to believe the false…." Webster's Third New Int'l Dictionary at 584. Given these definitions, there can be no doubt that a reasonable jury could find that defendants' alleged conduct was deceptive. By allegedly taking positions as specialists who are required by NYSE rules to match customer orders whenever possible and instead trading for their own accounts to profit at the expense of existing public orders, defendants can properly be found to have tended to deprive their public customers through fraud or stealth. Put simply, defendants' customers were led to believe one thing when another was true – and this deception was integral to the alleged scheme to defraud because had defendants' customers known the truth, they may have shaped their orders differently (viz., by specifying a narrower price window to prevent the specialist from capturing the spread between the offered sell price and the offered buy price) or not placed orders at all. Accordingly, the indictment does not fail as a matter of law in regard to its allegations of violations of subsections (a) and (c) of section 10b-5.

**C. The Indictment Fails to Allege Material Misstatements or Omissions**

The government also alleges that defendants' conduct violated subsection (b) of Rule 10b-5, which makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading." The government's theory is that by virtue of their position as specialists, defendants owed a fiduciary duty of "best execution" to their public customers. This duty required defendants to disclose that they were improperly trading stocks to and from their own account ahead of executable public orders. The failure to disclose this information, according to the government, amounts to a material omission. Defendants counter that (1) specialists owe no general fiduciary duties to the public; (2) even if specialists have a duty of "best execution," that duty is vague and amorphous considering that specialists can be required pursuant to NYSE rules to trade for their proprietary accounts in order to maintain a fair and orderly market; and (3) failing to disclose a breach of an alleged duty of best execution is not an actionable omission under the securities laws.

Even if the government is correct that a reasonable jury could find that defendants owed a fiduciary duty of best execution to their public customers, see Market Street Ltd. Partners v. Englander Capital Corp., No. 92 Civ. 7434, 1993 WL 212817, *9 (S.D.N.Y. Jun. 14, 1993) (finding that "[t]he specialist has fiduciary obligations closely resembling, if not identical to, those of a broker"), the government's theory of criminal liability pursuant to subsection (b) of Rule 10b-5 fails because neither the indictment nor the government's response to defendants' motion for a bill of particulars identifies any statements whatsoever made by defendants, let alone any that were rendered misleading by virtue of defendants' omissions.

In moving for a bill of particulars, defendants asked the government to "identify any and all alleged 'untrue statements of material facts', and any and all alleged omitted 'material facts.'" (Defs.' Mem. of Law in Support of Defs.' Motion for a Bill of Particulars at 4.) The government responded to this request as follows:

> The Government is not alleging 'the making of false statements' by the defendants…. The Government is alleging that the defendants violated the

> securities laws by, among other things, failing to abide by the rules and
> obligations applicable to them as specialists, failing to put the interests of public
> customers above their own interests, and failing or omitting to disclose that they
> were not executing customer orders ahead of their own in accordance with their
> obligations as specialists. Although there are no affirmative false statements that
> could be articulated in a bill of particulars..., the Indictment does allege – and the
> Government intends to argue – that the defendants failed to disclose (or omitted)
> material facts to customers.

(Gov.'s Mem. of Law in Opposition to Defendants' Second Discovery Motion Seeking a Bill of Particulars at 3.)

Subsection (b) of Rule 10b-5, however, prohibits only those omissions of material fact that "make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). The rule's plain language thus makes it clear that liability for an omission pursuant to subsection (b) requires a statement to have been made. See Chiarella, 445 U.S. at 225 n.5 (noting that the alleged failure to disclose at issue implicated "[o]nly Rules 10b-5(a) and (c)" and that the "portion of the indictment based on [subsection (b)] was dismissed because the petitioner made no statements at all in connection with the purchase of stock"); see also Wright v. Ernst & Young LLP, 152 F.3d 169, 174 (2d Cir. 1998) (noting that the Supreme Court's decision in Central Bank highlighted the importance of "strict adherence to the text" of the securities statutes).

It is true that courts have held that omissions predicated on the breach of a duty to disclose can constitute liability pursuant to Rule 10b-5, but without any identified statements at issue, courts typically refer to Rule 10b-5 generally, or to schemes to defraud pursuant to subsections (a) and (c), as opposed to subsection (b). See, e.g., Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 135 F.3d 266, 269, 273-74 (3d Cir. 1998) (en banc) (averring generally to "misrepresentation" without specifying any particular subsection of Rule 10b-5 in reversing district court's grant of summary judgment in case alleging breach of broker-dealers'

13

duty of "best execution"); Market Street Ltd. Partners, 1993 WL 212817 at *8 (complaint against specialists at the American Stock Exchange premised in part on failure to disclose violations of their fiduciary duties "suggests a 'scheme to defraud' as prohibited by Rule 10b-5"). The government cites no cases in which courts have specifically found liability pursuant to subsection (b) without the existence of any identifiable statements that were made misleading by a defendant's omissions.

Because the government has identified no such statements made by defendants after having been given ample opportunity to do so, defendants' motion is granted with respect to the provisions of the indictment charging defendants with violations of subsection (b) of Rule 10b-5.

**D. The Rule of Lenity and Due Process Concerns Do Not Require Dismissal of the Indictment**

Defendants assert that even if their conduct could form a basis for civil liability, the rule of lenity should prohibit criminal prosecution principally because "the conduct alleged does not fairly fall within the core of the anti-fraud prohibition articulated by Section 10(b)." (Defs.' Mem. of Law in Support of Their Motion To Dismiss the Indictment at 12.) They further contend that due process considerations should bar prosecution because the case is premised "on a theory of fraud that has never been prosecuted as a crime." (Id. at 15.)

Defendants' argument disregards the clear language of section 10(b) and Rule 10b-5, both of which leave no doubt that fraud in connection with securities transactions is a federal crime. See Chapman v. United States, 500 U.S. 453, 463, 111 S. Ct. 1919, 114 L. Ed. 2d 524 (1991) ("The rule of lenity … is not applicable unless there is a 'grievous ambiguity or uncertainty in the language and structure of the Act,' such that even after a court has 'seize[d] every thing from which aid can be derived,' it is still 'left with an ambiguous statute.'" (quoting

14

Huddleston v. United States, 415 U.S. 814, 831, 94 S. Ct. 1262, 39 L. Ed. 2d 782 (1974) and United States v. Bass, 404 U.S. 336, 347, 92 S. Ct. 515, 30 L. Ed. 2d 488 (1971))); see also United States v. Shabani, 513 U.S. 10, 17, 115 S. Ct. 382, 130 L. Ed. 2d 225 (1994) ("The rule of lenity … applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute."). The fact that the statute does not spell out the exact type of fraud alleged here is irrelevant. See Russo, 74 F.3d at 1390 ("Novel or atypical methods should not provide immunity from the securities laws.").

The basis for defendants' due process claim is that they were not put on notice that their conduct could constitute criminal securities fraud because the NYSE treated trading ahead or interpositioning as minor violations of the rules equivalent to "mere 'traffic tickets'" as opposed to securities fraud. (Defs.' Reply Mem. at 14-15.) The alleged leniency or lassitude of the NYSE in enforcing its rules, however, cannot preclude prosecution for conduct that falls within the ambit of the statute. Defendants urge that United States v. Brennan, 183 F.3d 139, 150 (2d Cir. 1999), stands for the proposition that due process is violated when the relevant civil authority suggests that a defendant's alleged conduct does not violate the very rule under which he is being prosecuted. In Brennan, however, the court noted that the defendants had "substantial reason" to believe that their conduct was not illegal because there was extensive state and federal case law running directly counter to the government's theory of illegality. See Brennan, 183 F.3d at 150. Here, on the other hand, not only do defendants' alleged actions constitute clear violations of NYSE rules, but also the bulk of the relevant case law – other than, at best, the one line of cited dicta in Central Bank – does not support defendants' position. Thus, nothing in Brennan suggests that defendants can avoid prosecution simply because the NYSE did not treat their conduct as seriously as the U.S. government now does.

III. Conclusion

For the reasons set forth above, defendants' motion to dismiss the indictment is denied except with respect to the indictment's allegations concerning violations of subsection (b) of Rule 10b-5; as to those allegations, it is granted.

Dated: New York, New York
May 1, 2006

SO ORDERED:

Sidney H. Stein, U.S.D.J.